**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| Adriana Rodriguez, individually on behalf of herself and all others similarly situated, | : <br> : <br> :    Case No. <br> : |
| Plaintiff, <br> v. | : <br> : <br> : |
| Veridian Healthcare LLC, | :    **CLASS ACTION** <br> :      **COMPLAINT** |
| Defendant. | : <br> :    <u>**JURY TRIAL DEMANDED**</u> <br> : <br> : |

---

Plaintiff Adriana Rodriguez (hereinafter "Plaintiff"), individually on behalf of herself and all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      This action seeks to remedy the deceptive and misleading business practices of Veridian Healthcare LLC (hereinafter "Defendant") with respect to the marketing and sale of Defendant's various pain relief lidocaine patch products throughout the state of New York and throughout the country, including, but not limited to, the following products (hereinafter collectively the "Products"):

- Theracare Pain Therapy Maximum Strength Pain Relief 4% Lidocaine Patch;

- Healthwise Maximum Strength Pain Relief 4% Lidocaine Patch;

1

- Healthwise Maximum Strength Pain Relief 4% Lidocaine Patch, Topical Anesthetic; and

- Healthwise Lidocaine + Menthol Pain Relief Medicated Patch.

2.     Lidocaine belongs to the family of medicines called local anesthetics.  It prevents pain by blocking the signals at the nerve endings in the skin.[1]  Lidocaine patches are often prescribed by doctors, but Defendant offers the Products over-the-counter to consumers.

3.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign that represents that its lidocaine patches provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

4.     As depicted below, Defendant claims that the topical patches provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

---

[1] https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776.





**HealthWise**™

NEW

NDC 71101-915-06

COMPARE TO
SALONPAS® LIDOCAINE PATCH
ACTIVE INGREDIENT*

Maximum Strength
**PAIN RELIEF**
4% Lidocaine Patch

• No-Mess, Targeted Pain Relief
• Single-Use Application
• Easy to Apply and Remove
• Stay-Put Flexible Patch
• Odor Free
• Lasts Up to 12 Hours

**6** PATCHES
3.93 IN. X 5.51 IN. (10 cm x 14 cm)





NEW

NDC 71101-914-05

+HealthWise™

COMPARE TO *ICY HOT*®
LIDOCAINE PLUS MENTHOL PATCH
ACTIVE INGREDIENTS✻

Lidocaine+Menthol
## PAIN RELIEF
Medicated Patch

- No-Mess, Targeted Pain Relief
- Single-Use Application
- Easy to Apply and Remove
- Stay-Put Flexible Patch
- Lasts Up to 12 Hours

5 PATCHES
3.93 IN. X 5.51 IN. (10 cm x 14 cm)

5.      However, Defendant's claims, representations, and warranties are false and misleading.  As explained in further detail below, despite proper application, within a short time the Products commonly fall off of consumers' bodies, thus depriving consumers of the advertised benefits (i.e.- they don't provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours" as promised).

6.      Moreover, Defendant labels some of the Products as providing "maximum strength" despite these Products only containing 4% lidocaine.

7.      However, Defendant's "maximum strength" claims are false and deceptive because there are other products available that offer lidocaine patches containing 5% lidocaine.[2]

8.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours" when purchasing and administering the Products.  Plaintiff and Class Members paid a premium for the Products based upon these representations.  Given that Plaintiff and Class Members paid a premium for Products based on Defendant's misrepresentations that the Products provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours" Plaintiff and Class Members suffered an injury in the amount of the premium paid.

9.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach its warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on

---

[2] https://www.mountainside-medical.com/products/lidocaine-patch-5-by-watson; *see also* https://medic.hrt.org/drug/lidocaine-5-patch-adhesive-patch-medicated-3.

behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

10.     Lidocaine patches, akin to the Products, utilize lidocaine, an anesthetic, to cause loss of feeling in the skin and surrounding tissues to help alleviate pain in the applied bodily area.[3]

11.     Typically, lidocaine patches are prescribed by physicians.[4]   However, many companies have noticed the popularity of lidocaine patches amongst consumers and as a result now offer over-the-counter lidocaine patches, like the Products, to capitalize on consumers' desire for lidocaine pain relief patches.  Indeed, consumers are willing to pay, and have paid, a premium price for these products.  This is reflected in the global pain relief patches market size that is projected to reach 940.1 million USD by 2026.[5]

12.     Defendant falsely markets its Products as providing a "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours." Despite these representations, Defendant's Products do not stay-put on consumers for up to 12 hours, and consequently do not provide the promised four percent maximum strength dose of lidocaine contained in the Products for up to 12 hours.

13.     Reasonable customers, including Plaintiff and Class Members, believe that Products that are marketed as being able to provide a "4%" and/or "maximum strength" dose through "stay-put" patches that can be used for "up to 12 hours," will continuously adhere to their bodies for up to 12 hours, be sufficiently flexible to withstand regular daily activities, and will

---

[3] https://my.clevelandclinic.org/health/drugs/19854-lidocaine-skin-cream-or-ointment.
[4] https://www.webmd.com/drugs/2/drug-8532-1252/lidocaine-topical/lidocaine-patch-topical/details.
[5] https://www.thecowboychannel.com/story/45321517/pain-relief-patches-marketnbspsizenbspgrowthnbspratenbspanalysis-2021-2026-by-global-industry-trends-development-history-regional-overview-sharehttps://www.thecowboychannel.com/story/45321517/pain-relief-patches-marketnbspsizenbspgrowthnbspratenbspanalysis-2021-2026-by-global-industry-trends-development-history-regional-overview-share.

provide the pain relief for the 12 hours at maximum strength; however, the Products do not because they do not stay adhered to consumers' bodies for 12 hours.

14.     Moreover, the Federal Drug Administration (hereinafter "FDA") issued a report that transdermal drug patches (such as the Products) systemically fail to adhere to the body and thus do not provide the claimed pain relief.[6]

15.     Further, the FDA Adverse Events Reporting System reports that approximately 70% of concerns stemming from lidocaine patches involve their poor adhesion.[7]  This is in line with the above customer complaints regarding the Products' lack of adhesion abilities.

16.     A 2021, peer-reviewed published study in the Journal of Pain Research found that 0% of generic prescription lidocaine patches had a >90% adhesion rate after 12 hours.[8]  Moreover, the authors found that the mean adhesiveness score of the generic lidocaine patches after 12 hours was 37.67%.[9]  This figure is based on a scale where zero percent reflects complete detachment and 50% reflects half the product lifting off the skin but not detached.[10]

17.     When consumers purchase pain-relief products the strength of the dose is an important consideration.  Thus, consumers are willing to pay a price premium for pain-relief products that have higher doses.  For example, on Amazon.com, a retail website, Amazon charges approximately $1.83 per patch for Defendant's lidocaine patches that are not labeled as "maximum

---

[6] *See* Yellela S.R. Krishnaiah, PhD, *FDA Perspectives on Product Quality of Transdermal Drug Delivery Systems*, Oct. 28, 2015, AAPS 2015_Sunrise Session; link: https://healthdocbox.com/Deafness/74997073-Fda-perspectives-on-product-quality-of-transdermal-drug-delivery-systems.html.
[7] *See* Jeff Gudin & Sri Nalamachu, *Utility of lidocaine as a topical analgesic and improvements in patch delivery systems*, Postgrad Med. 2020; 132(1):28-36; link: https://www.tandfonline.com/doi/full/10.1080/00325481.2019.1702296.
[8] *Id.*
[9] *Id.*
[10] *See* Gudin J, et al., *Open-Label Adhesion Performance Studies of a New Lidocaine Topical System 1.8% versus Lidocaine Patches 5% and Lidocaine Medicated Plaster 5% in Healthy Subjects,* J Pain Res. 2021; 14:513-526; link: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7914064/.

strength,"[11] but charges approximately $1.88 per patch for Defendant's "Thera Care Maximum Strength Pain Relief" patches that do include the "maximum strength" representation.[12]

18.     Additionally, reasonable customers also believe that when a Product is represented as "maximum strength" that there are no comparable products on the market that contain a greater dose; however, there are competitor prescription lidocaine patches that consist of 5% lidocaine as opposed to Defendant's 4% Products.[13] This 1% difference is significant with respect to claiming that the Products are "maximum strength," as compared to the 5% patches that are available. Thus, Defendant deceives reasonable consumers, like Plaintiff, into believing that they are purchasing the patch with the most lidocaine when there are other competitor prescription products available in the market that contain a higher dose of lidocaine.

19.     Despite all of this, Defendant continues to make the representations that the Products provide a "maximum strength" dose of lidocaine through a "stay-put flexible patch" for "up to 12 hours," even though they do not.

## PLAINTIFF'S CLAIMS

20.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products do provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours," when purchasing the Products. Plaintiff and other Class Members also believed that these claims were supported. Absent these misrepresentations, Plaintiff and Class Members would not have purchased the Products. Given

---

[11] *See* https://www.amazon.com/HealthWise-Lidocaine-Menthol-Relief-Patch/dp/B09BDB5X4S/ref=sr_1_5?crid=39R38KHE6BDVC&keywords=healthwise+lidocaine+and+menthol+patches&qid=1649279967&rdc=1&sprefix=healthwise+lidocaine+and+menthol+patches%2Caps%2C53&sr=8-5.
[12] *See* https://www.amazon.com/LIDOCAINE-RELIEF-MAXIMUM-STRENGTH-PATCHES/dp/B07BB6TPPF/ref=sr_1_56?crid=1Y3SHQ0154B60&keywords=lidocaine+patches&qid=1649279706&sprefix=lidocaine+patches%2Caps%2C61&sr=8-56.
[13] https://www.mountainside-medical.com/products/lidocaine-patch-5-by-watson; *see also* https://medic.hrt.org/drug/lidocaine-5-patch-adhesive-patch-medicated-3.

10

that Plaintiff and Class Members paid for Products they would not otherwise have purchased and/or paid a premium for the Products based on Defendant's misrepresentations, Plaintiff and Class Members suffered an injury in the amount of the purchase price of the Products and/or premium paid.

21.     Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the consumer protection statutes of all 50 states. Defendant breached and continues to breach its express and implied warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

22.     Through its deceptive advertising and representations, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

23.     Consumers rely on marketing and information in making purchasing decisions.

24.     By marketing the Products as having the ability to provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours" Defendant knows that those claims are material to consumers.

25.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon

such information in making purchase decisions, since the Products do not stay-put through flexible patches that apply for 12 hours to provide the represented maximum strength pain relief. Further, Defendant's misrepresentations are deceiving as there are competitor lidocaine patch products that provide greater lidocaine than Defendant's "maximum strength" Products.

26. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions because they purchased something of no value.

27. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

28. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for products marketed as having the ability to provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours" over comparable products not so marketed.

29. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted; and

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

30.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

31.     Plaintiff and the Class Members paid for Products that provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours" and that they believed actually did so. The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

32.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

33.     Plaintiff and Class Members read and relied on Defendant's representations about the benefits of using the Products, and purchased Defendant's Products based thereon. Had Plaintiff and Class Members known the truth about the Products, i.e., that they do not have the benefits they say they do (i.e. stay-put and provide pain relief for up to 12 hours and provide maximum amount possible of lidocaine) they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members;

(2) Plaintiff is a citizen of New York, and Defendant Veridian Health LLC, is a citizen of Illinois; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

35. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contract to supply goods within the state of New York, and supplies goods within the state of New York.

36. Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiff**

37. Plaintiff, Adriana Rodriguez, is an individual consumer who, at all times material hereto, was a citizen of New York State. Plaintiff purchased the Products during the Class Period in 2022 from an online retailer. Plaintiff purchased the Products in the state of New York, had the Products shipped to her home in the state of New York, and viewed the Products' marketing in the state of New York. Prior to purchasing the Products, Plaintiff read the Products' marketing. The claims of the Products Plaintiff purchased contained the representations that they provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours/" Plaintiff purchased the Products in reliance on Defendant's representations that the Products provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours." Plaintiff also relied on the "maximum strength" representation by believing the proper dosages were present in the Products to be deemed as "maximum strength." Plaintiff believes that products that claim to provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours." If the Products actually

did provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that works for "up to 12 hours" as represented, Plaintiff would purchase the Products in the immediate future.

38.     Had Defendant not made the false, misleading, and deceptive representation that the Products provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours." Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and paid more for the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worth less than the Products for which she paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

39.     Defendant, Veridian Healthcare LLC, is a corporation with its principal place of business in Gurnee, Illinois. Veridian Healthcare LLC is authorized to do business in New York. Veridian Healthcare LLC distributes its products, including the Products, throughout the United States. Veridian Healthcare LLC's line of lidocaine patches, including the Products purchased by Plaintiff and Class Members, are available at retail stores throughout New York and the United States.

40.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, omitting, and deceptive advertisements, packaging, and labeling of their Products.

## CLASS ALLEGATIONS

41.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and representation practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

42.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

43.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

44.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

45.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

46.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

47.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d. Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

e. Whether Plaintiff and the Class are entitled to injunctive relief; and

f. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

48. <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

49. <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

50. <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and representation practices.

51. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Products provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

52. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

53. Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Products. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if it actually did provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

54. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a. <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Products have been purchased by thousands of people throughout the United States;

b. <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i. Resolution of the issues presented in the 23(b)(3) class;

    ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive Products marketing and representations; and

    iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products as providing "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Products which was sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

55. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive representations to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of its Products. Plaintiff would purchase the Products again if it actually did provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

56. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

57. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

58. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, representing, marketing, and promoting the Products and from charging consumers monies in the future.

59. Defendant misleadingly, inaccurately, and deceptively advertise and market the Products to consumers.

60. Defendant's improper consumer-oriented conduct (including advertising the Products as providing "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours") is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

61.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a Products that (contrary to Defendant's representations) does not provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."  Plaintiff and the New York Subclass Members also relied to their detriment on the "maximum strength" representation by believing the proper dosages were present in the Products to be deemed as "maximum strength" even though they were not.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

62.     Defendant's advertising and Products' representations induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for it.

63.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

64.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

65.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

66.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

67.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

68.     Defendant's representations and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

69.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the representations and advertising and paid a premium for the Products which (contrary to Defendant's representations) do not provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours." Plaintiff and the New York Subclass Members also relied to their detriment on the "maximum strength" representation by believing the proper dosages were present in the Products to be deemed as "maximum strength" even though they were not. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

70.     Defendant's advertising and Products' representations induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

71.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

72.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

73.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and representations.

74.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

75.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

76.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

78.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

79.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

80.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

81.     Within a reasonable time after they knew or should have known, Defendant did not correct their Products' marketing and labeling to reflect the true nature of the Products' capabilities.

82.     Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o. Ind. Code § 26-1-2-313;

p. Iowa Code § 554.2313;

q. K.S.A. § 84-2-313;

r. K.R.S. § 355.2-313;

s. 11 M.R.S. § 2-313;

t. Md. Commercial Law Code Ann. § 2-313;

u. 106 Mass. Gen. Laws Ann. § 2-313;

v. M.C.L.S. § 440.2313;

w. Minn. Stat. § 336.2-313;

x. Miss. Code Ann. § 75-2-313;

y. R.S. Mo. § 400.2-313;

z. Mont. Code Anno. § 30-2-313;

aa. Neb. Rev. Stat. § 2-313;

bb. Nev. Rev. Stat. Ann. § 104.2313;

cc. R.S.A. 382-A:2-313;

dd. N.J. Stat. Ann. § 12A:2-313;

ee. N.M. Stat. Ann. § 55-2-313;

ff. N.Y. U.C.C. Law § 2-313;

gg. N.C. Gen. Stat. § 25-2-313;

hh. N.D. Cent. Code § 41-02-30;

ii. II. O.R.C. Ann. § 1302.26;

jj. 12A Okl. St. § 2-313;

kk. Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.      Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

83.    Defendant breached the express warranty because the Products do not provide "pain relief," that is "maximum strength," through a "stay-put flexible patch," that will work for "up to 12 hours."

84.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

85.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86. Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

87. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

88. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

89. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

90. Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

91. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing

Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.


Dated: April 11, 2022

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*